IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **Case No. 12 CR 723** |
| | ) | |
| ADEL DAOUD | ) | |
| ------------------------------------------------ | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **Case No. 13 CR 703** |
| | ) | |
| ADEL DAOUD | ) | |
| ------------------------------------------------ | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **Case No. 15 CR 487** |
| | ) | |
| ADEL DAOUD | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

This decision concerns several matters that are before the Court for decision and, as to certain of those matters, supplements the Court's oral ruling at the telephonic hearing on February 23, 2024.

**A.** (1) Defendant's "A supplement to my sentencing memorandum / motion to squash [sic] arrest or dismiss indictment / motion to impeach the UCE and CHS in the fake bombing and murder for hire cases" (No. 12 CR 723, dkt. 513, No. 13 CR 703, dkt. 196)
 (2) Defendant's "Motion for explanation" (No. 12 CR 723, dkt. 527; No. 13 CR 703, dkt. 210; No. 15 CR 487, dkt. 219)

A lengthy filing made by Mr. Daoud in December 2023 starts off stating that it is "a supplement to my last sentencing memorandum." *See* ECF p. 13 of 167. But the filing's title suggests more than that: it proposes dismissal of the 2012 and 2015

charges and asks to "impeach" the UCE and CHS. The term "UCE" is used to refer to the undercover government employee with whom Mr. Daoud planned the bombing as charged in the 2012 case. The term "CHS" is used to refer to the informant Mr. Daoud solicited to kill the UCE as charged in the 2015 case.

If one doesn't count the December 2023 filing's table of contents or its attached exhibits, it is 134 pages long. The Local Rules of this Court—for as long as the undersigned judge can remember—have prohibited motions or briefs exceeding 15 pages unless the filer gets advance permission from the Court to file a longer submission. *See* N.D. Ill. Local Rule 7.1. This filing by Mr. Daoud is *nine times longer* than the 15-page limit. Despite this, Mr. Daoud did not ask, either before or when filing it, for permission to file an excess-length memorandum. Mr. Daoud's *pro se* status does not help him here. As the Court carefully explained to Mr. Daoud when he decided to proceed without counsel, he does not get any special breaks on the rules of procedure due to his *pro se* status. The Court would not have permitted a motion or memorandum of this length if Mr. Daoud had asked in advance, and the Court will not permit it now, after the fact. The filing is stricken, at least to the extent it is considered as a motion—which appears to be how Mr. Daoud intends it.

Even if not stricken, this submission by Mr. Daoud, taken as a request to dismiss the indictment, lacks merit. His contention is that the evidence shows he was entrapped or coerced into committing the offenses charged in the 2012 and 2015 indictments and that the undercover agent and the informant have lied in various respects. Even if so, that is not a basis for dismissal of charges. Rather, entrapment is a defense addressed at a trial, largely because it involves inherently factual inquiries regarding predisposition

and inducement. On the contention that government witnesses—the UCE and the CHS—have made false statements, *Napue v. Illinois*, 360 U.S. 264 (1959), says that the government's knowing presentation of false testimony *at a trial* represents a denial of due process if there is a reasonable likelihood that it influenced the outcome of the trial. Consistent with this, the remedy for a *Napue* violation is a new trial, *see Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Curescu*, 674 F.3d 735, 739 (7th Cir. 2012), not dismissal of the charges. Here there was no trial; Mr. Daoud pled guilty. In short, the proposition that either the undercover employee or the informant made false statements to the government, or during the sentencing hearing—even if established by Mr. Daoud—would not entitle him to dismissal of any of the charges.

The Court is not suggesting that material false statements by government witnesses don't matter. Mr. Daoud can use the witnesses' claimed false statements or testimony to impeach their credibility and to argue that the Court should not rely on their statements for sentencing purposes. And he can cite claimed false testimony by the undercover employee and the informant as a mitigating factor in the Court's consideration of an appropriate sentence. But even if Mr. Daoud can demonstrate that one or both of these witnesses made false statements or gave false testimony, that does not entitle him to dismissal of the charges against him. The Court therefore overrules Mr. Daoud's motions to the extent they seek dismissal of charges.

It may be that Mr. Daoud is contending that the claimed false statements and testimony by the undercover agent and the informant should entitle him to withdraw his guilty plea. In particular, he contends, both in the sentencing memorandum supplement and his related "motion for explanation," that the facts show he is innocent. Mr. Daoud's

"motion for explanation," filed earlier this month, specifically contends that this is a basis to withdraw his guilty plea.

The Court disagrees. A defendant who has pled guilty does not have an absolute right to withdraw his guilty plea, even prior to sentencing—which is where the case is at this point, given the Seventh Circuit's reversal of the sentence imposed by Judge Coleman. A defendant seeking to withdraw his guilty plea must show a "fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). In considering a request to withdraw a guilty plea, a court is entitled to hold a defendant to the representations he made during the guilty plea colloquy. *See, e.g., United States v. Rinaldi*, 461 F.3d 922, 927 (7th Cir. 2006)

Under normal circumstances, a defendant's innocence may constitute a fair and just reason warranting withdrawal of a guilty plea. *See, e.g., Rinaldi*, 461 F.3d at 927; *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001); *United States v. Gomez-Orozco*, 188 F.3d 422, 425 (7th Cir. 1999). But these are not normal circumstances. Mr. Daoud pled guilty under *North Carolina v. Alford*, 400 U.S. 25 (1970). In other words, he pled guilty *even though he expressly continued to maintain his innocence*. And this was all quite clearly discussed on the record during the guilty plea colloquy. *See* Nov. 26, 2018 Tr. at 35-38. After the government put on the record an extensive factual basis supporting a guilty plea, Mr. Daoud said this: "I can say that the government's factual basis supports a conviction on each count, but I deny culpability and persist in my innocence. And I wish to plead guilty." *Id.* at 59; *see also id.* at 60 ("I mean, my understanding is I'm pleading guilty but I'm retaining my innocence."). When questioned specifically about this, Mr. Daoud said the following:

4

>DEFENDANT DAOUD: . . . I'm pleading guilty pursuant to Alford.
>
>THE COURT: All right. And Alford is what understanding? That's a lawyer -- that's lawyer talk, Alford. So you need to tell me. So you are not admitting that the facts are -- show your guilt, is that correct? You maintain your innocence, is that correct?
>
>DEFENDANT DAOUD: Yes.
>
>THE COURT: All right. Even though you admit that they have that evidence to present, is that correct?
>
>DEFENDANT DAOUD: Yes, ma'am.
>
>THE COURT: And you also are again maintaining your innocence despite the fact that you agree that that is the evidence that would be presented, and that evidence supports a finding of guilty, is that correct?
>
>DEFENDANT DAOUD: Yes, ma'am.

*Id.* at 63.

In other words, Mr. Daoud's claim of innocence is nothing new; he has contended this all along, including at the very hearing in which he nonetheless pled guilty. If claimed innocence were an appropriate basis for withdrawal of a guilty plea by a defendant who pled guilty under *Alford*, that would amount to a rule under which an *Alford* plea could be withdrawn at will by a defendant. That can't possibly be the law. Mr. Daoud has cited no cases that suggest this, and the Court has found none. To the contrary, the law makes clear what should be obvious: a defendant who has pled guilty under *Alford*, maintaining his innocence but pleading guilty anyway, doesn't get to withdraw his plea later simply by, again, maintaining his innocence. *See United States v. Buckley*, 847 F.2d 991, 998 n.4 (1st Cir. 1988) ("This argument misses the whole point of an *Alford* plea."). Mr. Daoud quite obviously has changed his mind and no longer thinks that pleading guilty was the right decision. But that is not a "fair and just"

reason warranting withdrawal of his *Alford* plea.

To be sure, there is additional evidence that has been produced to the defense since Mr. Daoud's entry of his guilty plea, specifically the complete recordings made over an extended period in the cell in which Mr. Daoud and the informant were housed. These were produced only in the past several months. But Mr. Daoud has not identified anything from this, or from anything else not available to the defense at the time of his guilty plea, that materially impacts the validity of his *Alford*-based guilty plea. Nor has Mr. Daoud identified anything in the recently produced material that undermines or materially impacts the extensive factual basis for his guilty plea that was put on the record at the time of the plea colloquy. On the question of entrapment in particular, there may have been a viable basis for Mr. Daoud to assert that as a defense on the first and second cases (though not the third) and go to trial, but Mr. Daoud knew that at the time and chose to plead guilty nonetheless. He has pointed to nothing new that materially impacts that decision.

For these reasons, the Court overrules Mr. Daoud's motions to the extent they seek to withdraw his guilty plea.

## B. Defendant's "motions to compel, impeach UCE and CHS, and dismiss – continued" (No. 12 CR 723, dkt. 515; No. 13 CR 703, dkt. 207; No. 15 CR 487, dkt. 207)

The Court denies this motion, for the reasons just described, to the extent it seeks dismissal of the charges or withdrawal of Mr. Daoud's guilty plea. The motion also includes several other requests, which the Court addressed at the February 23, 2024 hearing and addresses here again. Again, the term "UCE" is used to refer to the undercover government employee with whom Mr. Daoud planned the bombing as

6

charged in the 2012 case. The term "CHS" is used to refer to the informant Mr. Daoud solicited to kill the UCE as charged in the 2015 case.

    1.    "I want any and all copies of 9/14/12 [recording] and every UCE meeting." The government has represented on multiple occasions that it has produced all such recordings. The Court accepts the government's representation and has no basis to dispute it. Regarding the September 14, 2012 recordings, the Court acknowledges that they are difficult to hear in spots because the speakers are speaking quietly and/or there is background noise. But the Court was able to hear everything on the recordings (on both versions that were provided, a "hawk" file and a ".wav" file) with the aid of headphones, as well as everything on the separate short recording (identified as "AZ004") made from a recording device that was in the vehicle where Mr. Daoud and the undercover employee were both present. There do not appear to be any gaps or alterations. The Court also disagrees with Mr. Daoud's contention that the various versions of the recording differ. Specifically, the Court has listened to them, carefully, and discerns no differences. The government has also so represented.

    2.    "I want _all_ the CHS audio, unaltered." The government has represented on multiple occasions, including during the February 23 hearing, that it has produced all of these recordings and that none of them have been altered. Again, the Court has no basis to dispute this. Mr. Daoud's request is therefore moot.

    3.    "I want the MCC record on who took my blood [on] 1/31/23." During the February 23 telephonic hearing, Mr. Daoud explained that he needed this information to attempt to impeach a witness who testified at the sentencing hearing before this Court, specifically, a witness who denied making a particular statement to Mr. Daoud while

drawing blood from him and appeared to deny even drawing blood. The Court has directed the MCC to produce Mr. Daoud's medical records for January 2023 to standby counsel; it is possible that the records will identify the person who drew the blood. Aside from this, however, the information that Mr. Daoud seeks is not in the possession or control of the government (i.e., the prosecution team).

4. "I want CHS William Vincent Paschal's sentencing transcript." Mr. Paschal was sentenced in state court. This transcript is not in the possession or control of the government. The Court directed Mr. Daoud's standby counsel to obtain the transcript. Counsel reported at the February 23 hearing that she had obtained the transcript and was in the process of getting it to Mr. Daoud at the MCC.

5. "I want the unedited transcript of the most recent resentencing hearing." This request relates to Mr. Daoud's contention that a word (in Arabic) was omitted from a transcript; he suggests the transcript was "altered." That is just plain incorrect. The court reporter prepares the transcript, and no one—not the Court, the government, or the defendant—is able to alter it. As the Court explained during the February 23 hearing, court reporters are human and thus sometimes make mistakes. As the Court explained during the hearing, if Mr. Daoud believes the transcript contains an error, he should identify it by date, page, and line number, and the Court will direct the Court reporter to re-listen to the audio recording of the hearing to determine if the transcript needs to be corrected.

6. "I want UCE and CHS impeached for their lies fundamental to their cases." As the Court explained during the February 23 hearing, Mr. Daoud will have the opportunity, before the Court imposes sentence, to make arguments regarding the

8

weight and consideration to be given to the evidence offered in connection with sentencing—including the statements by the undercover employee and the informant.

7. "I want my cases dismissed because the main witnesses, mainly UCE and CHS, are liars, and I got all this evidence about CHS after my Alford plea, and I just got this audio of the last few minutes of 9/14/12." First of all, the Court disagrees that Mr. Daoud "just got" the September 14, 2012 audio recordings; they were produced to his counsel years ago, long before he pled guilty. Second, the recordings made at the Kankakee County Jail in the cell housing Mr. Daoud and the informant were not timely produced by the government prior to Mr. Daoud's guilty plea. Rather, they were produced only within the last few months. Mr. Daoud has now had an opportunity to review them, though the Court acknowledges that given his custodial status, review of recorded evidence is cumbersome and not easy. But Mr. Daoud cites no legal or other authority supporting the proposition that the late production of these recordings should, as he requests, result in dismissal of the charges against him. Nor has he identified (or attempted to identify) anything about the recordings or their late production that would warrant allowing him to withdraw his guilty plea. On this point, the Court repeats what it told Mr. Daoud, in very pointed terms, during the February 23 hearing: it would be wise for Mr. Daoud to resume being represented by counsel instead of representing himself, because counsel would be more familiar with the nature of the showing needed to warrant consideration of a request to withdraw Mr. Daoud's guilty plea.

For these reasons, the Court denies Mr. Daoud's "motions to compel, impeach UCE and CHS, and dismiss – continued."

9

C. **Defendant's "motions to compel, impeach UCE and CHS, and dismiss – continued – continued" (No. 12 CR 723, dkt. 523; No. 13 CR 703, dkt. 198; No. 15 CR 487, dkt. 215)**

In this motion, Mr. Daoud represents that the recordings at the Kankakee Jail (the CHS recordings) are of different lengths even though the recording was ostensibly going all day, that is, for a 24-hour period. At the February 23 hearing, the Court directed the government to provide by March 8, 2024 a written representation that all of the Kankakee recordings have been produced, as well as information regarding their source, where they were maintained, and when they came into the government's possession. The Court has now received the government's submission. Mr. Daoud may file a reply by March 18, 2024.

Mr. Daoud again says in this motion that transcripts of the sentencing hearing have been altered. That is incorrect, as the Court has explained earlier in this order and at the February 23 hearing. As noted earlier, if Mr. Daoud sees an error or omission in the transcript, he should bring it to the Court's attention by date, page, and line number, and the Court will have the court reporter re-review the audio recording to make sure the written transcript is accurate.

D. **"The original online post"**

The Court's order of October 23, 2023 (No. 12 CR 723, dkt. 500) refers to a request by the defendant for production of "the [online] post that started the investigation." The government responded that it had produced an FBI report describing the online post but that the post itself, as well as the method of its collection, are classified material and thus cannot be produced to Mr. Daoud. At the February 23 hearing, the Court directed the government to make an appropriate filing under the

10

Classified Information Procedures Act regarding the online post, by April 5, 2024. The Court will determine after reviewing that filing whether any further disclosures to Mr. Daoud are legally appropriate.

### Conclusion

For the reasons stated above, the Court denies the following motions:

- Case No. 12 CR 723, dkt. nos. 513, 515, 523, 527.
- Case No. 13 CR 703, dkt. nos. 196, 198, 207, 210.
- Case No. 15 CR 487, dkt. nos. 207, 215, 219.

Standby counsel is directed to promptly provide a copy of this order to Mr. Daoud.

Date: March 11, 2024

_____
MATTHEW F. KENNELLY
United States District Judge